## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

TIMOTHY M. SEAGLE,  }
                    }
        Plaintiff,  }
                    }
vs.                 }    Case No.:  2:23-CV-582-MHH
                    }
THE CITY OF HUEYTOWN,  }
ALABAMA, *et al.*,     }
                    }
        Defendants.  }

## <u>MEMORANDUM OPINION AND ORDER</u>

*Pro se* plaintiff Timothy M. Seagle filed this lawsuit against The City of Hueytown, Alabama, Mayor Steve Ware, Mike Yarbrough, Sgt. Chad Mitchell, Officer Todd Easterwood, Three Unidentified Hueytown Police Officers, and Catherine Lawrence Snow.  Mr. Seagle alleges several claims, all stemming from his arrest in 2021.  (Doc. 1).  The City, Mayor Ware, Chief Yarbrough, Sgt. Mitchell, Officer Easterwood, and Ms. Snow have filed motions to dismiss this action.  (Docs. 14, 18, 28, 31).  Mr. Seagle has filed a motion for default judgment against Ms. Snow.  (Doc. 26).

To address these motions, the Court first describes the legal standard for motions to dismiss.  Then, applying that legal standard, the Court summarizes Mr.

1

Seagle's factual allegations.  Finally, the Court examines Mr. Seagle's claims against the defendants to determine which claims may proceed.

## I.

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  A Rule 8(a)(2) statement of a claim "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2009)).

"Thus, the pleading standard set forth in Federal Rule of Civil Procedure 8 evaluates the plausibility of the facts alleged, and the notice stemming from a complaint's allegations." *Keene v. Prine*, 477 Fed. Appx. 575, 583 (11th Cir. 2012).  "Where those two requirements are met . . . the form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim." *Keene,* 477 Fed. Appx. at 583.

This is particularly true with respect to *pro se* complaints. Courts must liberally construe *pro se* documents. *Erickson*, 551 U.S. at 94. A district court must hold a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Still, a district court "may not serve as de facto counsel for a party, or … rewrite an otherwise deficient pleading in order to sustain an action." *Ausar-El ex. rel. Small, Jr. v. BAC (Bank of America) Home Loans Servicing LP*, 448 Fed. Appx. 1, 2 (11th Cir. 2011) (internal quotations and citations omitted).

When evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *See Brophy v. Jiangbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015). In doing so, the court recognizes that facts may develop during discovery that tell a different story.

## II.

Viewing Mr. Seagle's allegations in the light most favorable to him, he asserts that he and Ms. Snow were involved in a romantic relationship for more than a year. (Doc. 1, p. 3, ¶ 9). In January 2021, Mr. Seagle and Ms. Snow had a disagreement, and she punched him in the chest. (Doc. 1, p. 3, ¶ 10). Afterwards, Mr. Seagle and Ms. Snow blocked each other on social media. (Doc. 1, p. 3, ¶ 11). One week after the disagreement, Mr. Seagle learned that Ms. Snow had posted derogatory remarks

about him on her Facebook page and had published details of their altercation.  (Doc. 1, p. 3, ¶ 11).  Ms. Snow privately admitted to Mr. Seagle via text message that she assaulted him.  (Doc. 1, p. 3, ¶ 10).

Ms. Snow contacted the Shelby County Sheriff's Department and filed a false incident report.  In the report, Ms. Snow falsely asserted that Mr. Seagle posed a danger to her.  (Doc. 1, pp. 3–4, ¶ 12).  The Shelby County Sheriff's Department sent patrol officers to monitor the parking lot of Ms. Snow's apartment complex to make sure that Mr. Seagle was not stalking her.  (Doc. 1, p. 4, ¶ 12).  All the while, Ms. Snow was contacting Mr. Seagle, meeting him at bars, clubs, restaurants, and home.  (Doc. 1, p. 4, ¶ 12).  Ms. Snow initiated every contact.  (Doc. 1, p. 4, ¶ 12).

On May 14, 2021, while Mr. Seagle was visiting Sportster's Bar & Grill, Ms. Snow parked her car next to his.  (Doc. 1, p. 5, ¶ 15).  The cars were parked under a security camera.  (Doc. 1, p. 5, ¶ 15).  When Mr. Seagle returned to Sportster's Bar & Grill on May 19, the owner told him that Ms. Snow had reported that someone had tampered with her car.  (Doc. 1, p. 5, ¶ 17).  Ms. Snow had a cell-phone recording of the bar's security camera footage showing Mr. Seagle walking near her car.  (Doc. 1, p. 5, ¶ 17).  Mr. Seagle shared the video footage with the Hueytown Police Department.  (Doc. 1, pp. 5–9, 11–12).  Hueytown's District Attorney, Teresa Hester, and Hueytown Magistrate, Rebecca Henderson, used the clip as the basis for an arrest warrant for Mr. Seagle.  (Doc. 1, pp. 7–8, ¶ 26).  According to Mr. Seagle,

Chief Yarbrough and Sgt. Mitchell knew or should have known that the arrest warrant was invalid, but they arrested him anyway on May 24, 2021 for domestic violence. (Doc. 1, pp. 5, 12, ¶¶ 18, 40).

Mr. Seagle alleges that Magistrate Henderson instructed Ms. Snow to file a protection from abuse motion. (Doc. 1, p. 8, ¶ 27). Mr. Seagle asserts that Magistrate Henderson instructed Ms. Snow to do so to conceal the unlawful warrant for his arrest. (Doc. 1, p. 12, ¶ 41).

After his arrest, Mr. Seagle posted bail at Hueytown City Hall with the help of his neighbor, Barry Higginbotham. (Doc. 1, p. 5, ¶ 18). Mr. Seagle alleges that while speaking with his bail bondsman in the City Hall, two unidentified Hueytown police officers accused Mr. Higginbotham of being an alcoholic, a drug addict, and a drug dealer, and threatened to arrest Mr. Higginbotham for trespassing if he returned to Hueytown City Hall. (Doc. 1, p. 5, ¶ 18). According to Mr. Seagle, Ms. Hester eventually admitted that the video footage that Ms. Snow used to obtain an arrest warrant for Mr. Seagle was "a legally invalid copy," and Judge Thrash dismissed the criminal charge against Mr. Seagle in March 2023. (Doc. 1, p. 12, ¶ 40).

Based on these alleged events, Mr. Seagle states fourteen claims against the defendants. He asserts Fourth and Sixth Amendment claims against all defendants; a Fifth Amendment claim against Ms. Snow and the City; a "deliberate indifference

through custom" claim against the City, Mayor Ware, and Chief Yarborough; an inadequate training and supervision claim against the City, Mayor Ware, and Chief Yarborough; a defamation claim against Chief Yarborough, Sgt. Mitchell, Officer Easterwood, the three unidentified officers, the City, and Ms. Snow under Alabama Code § 13A-11-163; a malicious abuse of process and malicious prosecution claim against Ms. Snow, Chief Yarborough, Sgt. Mitchell, Officer Easterwood, and the City; Fourteenth Amendment due process and equal protection claims against Ms. Snow, Chief Yarborough, Sgt. Mitchell, Officer Easterwood, and the City; a First and Fourteenth Amendment claim for denial of the right to freedom of association against Ms. Snow; willful infliction of emotional distress against all defendants; and domestic violence against Ms. Snow. (Doc. 1, pp. 15–19). Mr. Seagle names Mayor Ware, Chief Yarbrough, Sgt. Mitchell, and Officer Easterwood in their official and individual capacities.

## III.

### Fictitious Party Practice

Mr. Seagle asserts claims against three unidentified Hueytown police officers. Generally, fictitious party practice is not permitted in federal courts. FED. R. CIV. P. 10(a) ("The title of the complaint must name all the parties."); *see also Estate of West v. Smith*, 9 F.4th 1361, 1368 n.6 (11th Cir. 2021) ("As a general matter, fictitious-party pleading is not permitted in federal court.") (quoting *Richardson v.*

*Johnson*, 598 F.3d 734, 738 (11th Cir. 2010)). There is a limited exception to this rule. As the Eleventh Circuit has explained:

> There may be times when, for one reason or another, the plaintiff is unwilling or unable to use a party's real name. Also, one may be able to describe an individual (e.g., the driver of an automobile) without stating his name precisely or correctly.

*Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) (citation omitted); *Cf. Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (finding a *pro se* improperly named a fictitious party when the plaintiff merely "identified the defendant as 'John Doe (Unknown Legal Name), Guard, Charlotte Correctional Institute'").

Here, Mr. Seagle has not sufficiently described the three unidentified police officers to maintain claims against those defendants. Aside from the caption and introductory paragraph, Mr. Seagle mentions the unnamed officers twice in his complaint. Mr. Seagle alleges that he encountered two of the unnamed officers on May 24, 2021, in the Hueytown Police Department parking lot when he returned from posting bail and found the officers standing on the passenger side of his car, arguing with his neighbor. (Doc. 1, p. 5, ¶ 18). Mr. Seagle overheard his neighbor tell the officers that he was a witness in Mr. Seagle's false arrest case. (Doc. 1, p. 5, ¶ 18). Mr. Seagle has not described identifying physical characteristics of the officers or provided other details to assist in identifying these two officers.

Mr. Seagle alleges that he encountered the third unnamed officer on

September 16, when the officer refused to let Mr. Seagle's neighbor enter the Hueytown municipal courtroom so he could serve as Mr. Seagle's witness. (Doc. 1, p. 10, ¶ 32). Again, Mr. Seagle has not provided details describing this officer. Supplying an unnamed defendant's occupation and employer is not sufficient to satisfy fictitious party exception's specificity requirement when the employer has many employees who fit the general description. *See Richardson*, 598 F.3d at 738. If nothing more were required, the exception would swallow the rule. Consequently, the Court will dismiss Mr. Seagle's claims against these three defendants without prejudice. If Mr. Seagle identifies the officers during discovery and wishes to pursue claims against them, he may ask for permission to amend his complaint to name them.

## Official Capacity Claims

Mr. Seagle asserts federal and state-law claims against the City and several city officials. As the Eleventh Circuit has explained, "suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent." *Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1303 n.3 (11th Cir. 2005). "[W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply 'another way of pleading an action against an entity of which an officer is an agent.'" *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165

(1985)).  "A municipality can be sued directly under § 1983 when one of its customs, practices, or policies causes a constitutional injury."  *Barnett v. MacArthur*, 956 F.3d 1291, 1296 (11th Cir. 2020) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978)).  "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly."  *Busby*, 931 F.2d at 776; *see Abusaid*, 405 F.3d 1298 at 1302 n. 3 (stating that when an officer is sued in his official capacity, the officer's employer is the proper party to the action).

Because Mr. Seagle has sued the City of Hueytown, the Court will dismiss his official capacity claims against Mayor Ware, Chief Yarborough, Sgt. Mitchell, and Officer Easterwood.

### Constitutional Claims against the City

In Counts 1–5, 7, and 9–11, Mr. Seagle asserts claims against the City under 42 U.S.C. § 1983 for several alleged constitutional violations.  To succeed in a claim against a municipality, a plaintiff must identify an official policy or an unofficial municipal custom or practice that produced the alleged violation.  *Knight ex rel. Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 819 (11th Cir. 2017).  Either way, "a plaintiff must show that the [municipality] 'has authority and responsibility over the

governmental function in issue' and must also 'identify those officials who speak
with final policymaking authority for that local governmental entity concerning the
act alleged to have caused the particular constitutional violation in issue.'" *Knight*,
856 F.3d at 819 (citations omitted).  Here, Mr. Seagle must allege that the City has
a custom or practice of allowing the constitutional violations he identifies and that
the City's custom is "the moving force behind the constitutional violation." *Knight*,
856 F.3d at 819;  *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

Mr. Seagle alleges that the City has a criminal policy of "arresting[] and
convicting every person[] accused of committing domestic violence," which
"involves the concealment of exculpatory evidence, the fabrication, and/or
spoilation of inculpatory evidence, the introduction of known, legally-invalid
evidence, and the criminal intimidation of defense witnesses."  (Doc. 1, p. 10, ¶ 32).
Quoting *Rasche v. Village of Beecher*, 336 F.3d 588 (7th Cir. 2000), Mr. Seagle
argues that the City has an "*unconstitutional custom or policy which creates*
*municipal liability, and results from widespread practice that although not*
*authorized by written law, nor express municipal policy, is so well settled as to*
*constitute a 'custom or usage' with force of law*."  (Doc. 1, p. 13, ¶ 42) (emphasis in
complaint).

These conclusory allegations are not sufficient to identify a municipal policy
or practice.  Mr. Seagle's allegations pertain to either his or Mr. Higginbotham's

interactions with City officials.  Mr. Seagle has not identified arrests other than his for domestic violence, and he has not identified a conviction, not even his own. Rather, Mr. Seagle acknowledges in his complaint the Judge Thrasher dismissed the domestic violence charge in his case.  (Doc. 1, p. 12, ¶ 40).   As the Supreme Court has held, formulaic recitations of the law and legal conclusions cannot establish a plausible claim against a defendant.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, the Court will dismiss Counts 1–5, 7, and 9–11 against the City.

### State-law Claims against the City

In Counts 6, 8, and 13, Mr. Seagle alleges against the City state-law claims for defamation, malicious abuse of process/prosecution, and willful infliction of emotional distress.  Under Alabama Code § 11-47-190, "[n]o city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty[.]"  The Alabama Supreme Court has held that under this statute, a city may not be held liable for intentional torts that a municipal official allegedly commits. *See Ex parte City of Gadsden*, 718 So. 2d 716, 721 (Ala. 1998); *see also Ex parte Labbe*, 156 So. 3d 368, 374 (Ala. 2014) (citing Ala. Code § 11-47-190).

The state-law claims that Mr. Seagle asserts against the City are intentional

torts.  To state a malicious prosecution claim or a malicious abuse of process claim, a plaintiff must plausibly allege, among other things, that the wrongdoer acted with malice.  *Moon v. Pillion*, 2 So. 3d 842, 845 (Ala. 2008) (malicious prosecution); *Willis v. Parker*, 814 So. 2d 857, 866 (Ala. 2001) (malicious abuse of process). Likewise, a willful or intentional infliction of emotional distress claim involves an intentional act.  *Little v. Robinson*, 72 So. 3d 1168, 1172 (Ala. 2011); *Harris v. McDavid*, 553 So. 2d 567, 569–570 (Ala. 1989).[1]  And defamation is an intentional tort under Alabama law.  *Garcia v. Casey*, 75 F.4th 1176, 1192–93 (11th Cir. 2023) (citing *Gary v. Crouch*, 867 So. 2d 310, 313 (Ala. 2003); *Ex parte Pinkard*, 373 So. 3d 192, 202–03 (Ala. 2022); *Slack v. Stream*, 988 So. 2d 516, 531 (Ala. 2008)).

Therefore, the Court grants the City's motion to dismiss Mr. Seagle's state-law claims against it under § 11-47-190 because the City has state-agent immunity for those claims.  *See Garcia*, 75 F.4th at 1192–93.

Based on the foregoing, the Court will dismiss Mr. Seagle's claims against the City.

### Constitutional Claims against Mayor Ware and Chief Yarborough

In Count 4, Mr. Seagle alleges that Mayor Ware and Chief Yarbrough were deliberately indifferent to their officers' deprivations of his rights.  (Doc. 1, p. 15, ¶

---

[1] Intentional infliction of emotional distress is also known as the tort of outrage under Alabama law.  *See Wal-Mart Stores, Inc. v. Smitherman,* 872 So. 2d 833, 836 (Ala. 2003).

55).    In Count 5, Mr. Seagle alleges that Mayor Ware and Chief Yarbrough inadequately trained and supervised the Hueytown Police Officers who harmed him. (Doc. 1, p. 16, ¶ 57). These constitutional claims are supervisory liability claims.[2]

Typically, a plaintiff asserting a § 1983 claim against a government official who allegedly violated his constitutional rights must establish that official was acting under color of state law and that the official's conduct caused the plaintiff to be deprived of a federal right.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  For supervisory liability claims under § 1983 claims, the legal standard is more rigorous. *Christmas v. Harris Cnty.*, 51 F.4th 1348, 1355 (11th Cir. 2022) (citation omitted). A supervisor is not liable for the acts of subordinates under traditional respondeat superior or vicarious liability theories.  *Christmas*, 51 F.4th at 1355.  Rather, "[a] supervisor is liable for a subordinate's constitutional violation only if she 'personally participates in the alleged unconstitutional conduct' or causes the constitutional violation."  *A.W. ex rel. J.W. v. Coweta Cnty. Sch. Dist.*, 110 F.4th 1309, 1316 (11th Cir. 2024) (quoting *Christmas*, 51 F.4th at 1355).  Mr. Seagle does not allege that Mayor Ware or Chief Yarbrough personally participated in the constitutional violations he alleges, so Mr. Seagle's constitutional claims against these defendants may proceed only if he adequately alleges that Mayor Ware or Chief Yarbrough

---

[2] Counts 1–3 and 11 which Mr. Seagle asserts against "all defendants" also are supervisory liability claims with respect to Mayor Ware and Chief Yarborough.

caused the alleged constitutional violations. *See Coweta Cnty.*, 110 F.4th at 1316.

To meet this pleading requirement, Mr. Seagle must allege that "a history of widespread abuse put[] the supervisor on notice of the need to correct the alleged deprivation, and he fail[ed] to do so." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1048 (11th Cir. 2014) (citation omitted). Alternatively, Mr. Seagle may meet the pleading requirement by alleging that Mayor Ware and/or Chief Yarbrough's "custom or policy result[ed] in deliberate indifference to constitutional rights" or that either defendant (or both) "directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Keith*, 749 F.3d at 1048 (citation omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." *Keith*, 749 F.3d at 1048 (citation omitted).

In Count 4, Mr. Seagle alleges that Mayor Ware and Chief Yarborough "have tolerated the continued, and illegal seizures of the citizens of its community, such that the conduct is so persistent and widespread, as to constitute custom and policy of the City, and the Police Dept." (Doc. 1, p. 16, ¶ 55). He states that Mayor Ware and Chief Yarbrough received notice of the officers' crimes against him and against his neighbor, Mr. Higginbotham, but failed to take any corrective action. (Doc. 1, p. 15, ¶ 55). These allegations are not sufficient to support a supervisory liability

claim against Mayor Ware or Chief Yarbrough for deliberate indifference.

First, when he asserts that Mayor Ware and Chief Yarbrough have tolerated constitutional deprivations so that the deprivations have become customary, Mr. Seagle merely restates the law and provides "a formulaic recitation of the elements of a cause of action," and that "will not do" under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678. Mr. Seagle has not alleged facts which, if proven, would provide evidence of widespread constitutional violations. The only misconduct Mr. Seagle describes in his complaint is purported misconduct directed to him and to Mr. Higginbotham. (Doc. 1, p. 15, ¶ 55). This alleged conduct does not support an allegation of "widespread abuse" or an allegation that Mayor Ware and Chief Yarbrough knew of allegedly prevalent violations. *See Keith*, 749 F.3d at 1048. Therefore, Mr. Seagle has not plausibly alleged a deliberate indifference claims against Mayor Ware and Chief Yarborough in their individual capacities under a supervisory liability theory. Accordingly, the Court will dismiss Count 4 without prejudice.

With respect to Mr. Seagle's failure to adequately train and supervise claim in Count 5, a supervisor's "culpability for a deprivation of rights is at most tenuous where a claim turns on a failure to train." *Keith*, 749 F.3d at 1053 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). A plaintiff alleging a constitutional violation under a failure to train theory "'must demonstrate that the supervisor had actual or constructive notice that a particular omission in their training program cause[d] [his

or her] employees to violate citizens' constitutional rights,' and that armed with that knowledge the supervisor chose to retain the training program." *Keith*, 749 F.3d at 1052 (alteration in original) (quoting *Connick*, 563 U.S. at 61). "To establish that supervisor was on actual or constructive notice of the deficiency of training, '[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary.'" *Keith*, 749 F.3d at 1053.

Mr. Seagle has not alleged facts to support his failure to train and failure to supervise claims against Mayor Ware or Chief Yarbrough. In his complaint, Mr. Seagle summarily states that these defendants "failed to adequately train[] and supervise the Hueytown Police Officers" in various areas, which "resulted in injuries to [Mr. Seagle] and his witnesses." (Doc. 1, p. 16, ¶ 57). Mr. Seagle states that Mayor Ware and Chief Yarbrough inadequately trained Hueytown officers on "arrest warrant procedures; [d]ue diligence in the proper investigation of criminal complaints, and evidence; [i]llegal seizures without probable cause; [t]he criminal intimidation of witnesses; and the constitutional rights of their citizens," but he does not allege facts that could constitute a pattern of similar constitutional violations by untrained employees. *See Keith*, 749 F.3d at 1052. Therefore, the Court will dismiss Count 5.

In two of the counts that Mr. Seagle asserts against "all defendants," Counts 1 and 2, Mr. Seagle asserts a § 1983 claim unlawful seizure, false arrest, and false

imprisonment in violation of the Fourth Amendment to the United States Constitution. "A claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests." *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020). In contrast, a wrongful arrest made pursuant to legal process (a warrant) constitutes malicious prosecution. *Williams*, 965 F.3d at 1168. Here, Mr. Seagle challenges his arrest which officers made pursuant to a warrant. (Doc. 1, p. 5, ¶ 18).[3] As such, Mr. Seagle's claims for false arrest and false imprisonment substantively are a claim for malicious prosecution.

A Fourth Amendment malicious prosecution claim turns on the validity of the legal process. *Williams*, 965 F.3d at 1162. To authorize an arrest warrant, a judicial officer must have "sufficient information to support an independent judgment that probable cause exists for the warrant." *Luke v. Gulley*, 50 F.4th 90, 95 (11th Cir. 2022) (citation omitted). An officer "ordinarily does not violate the Fourth Amendment when he executes a facially valid arrest warrant, regardless of whether facts known to the officer support probable cause." *Williams,* 965 F.3d at 1162. To establish a malicious prosecution claim against an individual other than the judicial officer issuing the warrant, a plaintiff must allege "(1) that the legal process justifying his seizure was constitutionally infirm and (2) that his seizure would not

---

[3] Though it is not entirely clear in the complaint, it appears that Mr. Seagle turned himself in after receiving notice that a warrant was issued for his arrest. This is immaterial to the Court's analysis of a malicious prosecution claim.

otherwise be justified without legal process." *Harris v. Hixon*, 102 F.4th 1120, 1133 (11th Cir. 2024) (citations omitted).

Here, Mr. Seagle has not alleged facts that plausibly give rise to a malicious prosecution claim under a supervisory liability theory. Mr. Seagle has not alleged facts that show a history of invalid arrest warrants about which Mayor Ware or Chief Yarbrough knew or should have known. *See Keith*, 749 F.3d at 1048. Similarly, Mr. Seagle has not identified or otherwise described a "custom or policy resulting in deliberate indifference" towards the issuance or execution of invalid arrest warrants. He has also not alleged facts to support an inference that Mayor Ware or Chief Yarbrough directed the individual officers to unlawfully arrest citizens. *See Keith*, 749 F.3d at 1048. For example, Mr. Seagle summarily states that "he was subjected to an Illegal Seizure, and False Arrest on May 26th, 2021, by the Defendant, Catherine L. Snow, and all other[] named defendants." (Doc. 1, p. 15, ¶ 49). This is insufficient to plausibly state a malicious prosecution claim under a supervisory liability theory against a supervisor, even construed liberally. Therefore, the Court will dismiss Counts 1 and 2 against Mayor Ware and Chief Yarbrough.

In Count 3, Mr. Seagle alleges that "all [] named defendants" violated his constitutional rights by conspiring to intimidate his witness. (Doc. 1, p. 15).[4] "A

---

[4] Mr. Seagle articulates the same conspiracy theory in Count 2, so the analysis for Count 3 applies equally to Count 2.

plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right." *Worthy v. City of Phenix City*, 930 F.3d 1206, 1224 (11th Cir. 2019) (citation omitted). The plaintiff must allege that "the defendants reached an understanding to violate the plaintiff's constitutional rights and that an actionable wrong occurred." *Worthy*, 930 F.3d at 1224 (internal citations and quotation marks omitted).

Mr. Seagle's allegations fail to plausibly establish a conspiracy claim against Mayor Ware or Chief Yarbrough. Mr. Seagle has not alleged facts the demonstrate an agreement or understanding between the defendants to deprive him of his constitutional rights. Mr. Seagle summarily states that Ms. Snow "conspired with employees of the City of Hueytown to injure, oppress, threaten, and intimidate him." (Doc. 1, p. 7, ¶ 23). He does not provide allegations to explain the existence or means of the conspiracy. Therefore the Court will dismiss Count 3 against Mayor Ware and Chief Yarbrough.

In Count 11, Mr. Seagle asserts a § 1983 claim for violation of the Sixth Amendment's speedy trial clause against all defendants, including Mayor Ware and Chief Yarbrough. (Doc. 1, p. 17). The Sixth Amendment provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature

and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

U.S. Const. amend. VI.   In determining whether there has been a violation of an individual's Sixth Amendment right to a speedy trial, a court must consider: whether a pretrial delay was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether the defendant asserted his right to speedy trial, and whether the defendant suffered prejudice because of the delay. *Doggett v. United States*, 505 U.S. 647, 651 (1992).

Here, Mr. Seagle's speedy trial claim is moot because Judge Thrash dismissed the charge against him. *See e.g.*, *Powers v. Schwartz,* 587 F.2d 783, 783–84 (5th Cir. 1979) (holding that the case was moot once the plaintiff was "no longer a pretrial detainee; [and] has not shown a reasonable probability that she will again acquire that status in the future"); (*see* Doc. 1, p. 14, ¶ 47).[5]   A federal court may not "give opinions upon moot questions or abstract propositions, or declare principles or rules of law which cannot affect the matter in issue in the case before it." *Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 733 (11th Cir. 2018).   Therefore, the Court will dismiss Count 11 against Mayor Ware and Chief Yarbrough.

---

[5] Decisions issued by the 5th Circuit before September 30, 1981, are binding precedent in this Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), *overruled on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996).

**State-law Claim against Mayor Ware and Chief Yarbrough**

In Count 13, Mr. Seagle alleges a willful infliction of emotional distress claim against Mayor Ware and Chief Yarbrough; this claim is substantively a tort of outrage claim. *See Smitherman,* 872 So. 2d at 836. Mr. Seagle alleges that Ms. Snow "conspire[d] with all [] named defendants to aggravate[] and compound his serious[] medical conditions." (Doc. 1, p. 18, ¶ 13). Under Alabama law, "[t]he tort of outrage is an extremely limited cause of action." *Little*, 72 So. 3d at 1172. To state a plausible claim for outrage, a plaintiff must sufficiently allege "that the defendant's conduct '(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.'" *Little*, 72 So. 3d at 1172 (citations omitted). Conduct must be so outrageous and so extreme that it extends "beyond all possible bounds of human decency" and is "regarded as atrocious and utterly intolerable in a civilized society." *Little*, 72 So. 3d at 1173 (citations omitted).

Mr. Seagle has not plausibly pleaded a claim for outrage against Mayor Ware and Chief Yarbrough. He does not allege that either engaged in conduct directed at him, much less conduct that was so extreme as to give rise to this narrow cause of action. *Little*, 72 So. 3d at 1172. Consequently, the Court will dismiss Count 13 against Mayor Ware and Chief Yarbrough.

**Claims against Sargeant Mitchell and Officer Easterwood**

As discussed, the Court must examine Mr. Seagle's Fourth Amendment claims in Counts 1 and 2 as a malicious prosecution claim. Because there was a warrant for Mr. Seagle's arrest, to establish a claim for malicious prosecution, Mr. Seagle must allege: "(1) that the legal process justifying his seizure was constitutionally infirm and (2) that his seizure would not otherwise be justified without legal process." *Harris,* 102 F.4th at 1133 (citations omitted). Mr. Seagle has not alleged facts to satisfy either requirement. He has not alleged facts to support his contention that the arrest warrant was unconstitutional, and he has not alleged that the arrest would be improper without a valid warrant.[6] Therefore, the Court will dismiss Counts 1 and 2 against Sargeant Mitchell and Officer Easterwood.

For Count 3, Mr. Seagle alleges that "all [] named defendants" conspired to falsely imprison him and intimidate his witness. As noted, to state a § 1983 claim for conspiracy to violate constitutional rights, a plaintiff must allege facts to establish

---

[6] Mr. Seagle alleges that the warrant was based on a video clip that Ms. Snow obtained by using her cell phone to record a security camera recording that showed him walking near Ms. Snow's car. Mr. Seagle asserts that the video recording is inadmissible because "the original video file ad been destroyed[] and could not be subjected to a forensic examination." (Doc. 1, pp. 5, 7-8, ¶ 17, 26). The rules of evidence are relaxed for arrest warrants which rest on probable cause*. See Turner v. Williams*, 65 F.4th 564, 581–82 (11th Cir. 2023) ("Probable cause only requires that there be a substantial chance of criminal activity. We do not require there be proof beyond a reasonable doubt of an arrestee's guilt, or even that there be a preponderance of evidence to support arrest. In other words, [p]robable cause is not a high bar." (internal quotations and citation omitted) (alteration in *Turner*)). Moreover, Mr. Seagle does not contend that the video recording did not depict him. Rather he contends that the video does not depict him violating the law. (Doc. 1, p. 5, ¶ 17).

a conspiracy and "the actual denial of some underlying constitutional right." *Worthy*, 930 F.3d at 1206 (citation omitted). The plaintiff must allege that "the defendants reached an understanding to violate the plaintiff's constitutional rights and that an actionable wrong occurred. *Worthy*, 930 F.3d at 1224 (internal citations and quotation marks omitted). Mr. Seagle does not allege how Sgt. Mitchell and Officer Easterwood reached an understanding to violate his constitutional rights. Therefore, the Court will dismiss Count 3 against Sgt. Mitchell and Officer Easterwood without prejudice.

In Count 6, Mr. Seagle claims that Sgt. Mitchell and Officer Easterwood are liable for defamation. Mr. Seagle alleges that through the acts of Ms. Henderson and Ms. Snow, Sgt. Mitchell and Officer Easterwood "published the lie that [he] had vandalized . . . [Ms. Snow's] car, and that [such was] Domestic Violence." (Doc. 1, p. 16, ¶ 59). A plaintiff asserting a defamation claim under Alabama law must plausibly allege: "1) a false and defamatory statement about the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; 4) and either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement." *Smitherman*, 872 So. 2d at 840 (internal quotations and citation omitted).

Mr. Seagle has not sufficiently alleged the existence of a publication by Sgt. Mitchell or Officer Easterwood.  Mr. Seagle asserts in a conclusory fashion that these defendants "repeatedly publish[ed] the lie that [Mr. Seagle] had vandalized [Ms. Snow's] car, and that said vandalism constituted Domestic Violence in the Third Degree," but the facts that follow pertain to Ms. Snow's conduct, not the conduct of these officers.  (Doc. 1, p. 16, ¶ 59).  Mr. Seagle alleges that Ms. Snow attempted to provide a flash drive containing purported proof of Mr. Seagle damaging Ms. Snow's car during a court appearance, which the judge refused to receive into evidence.  (Doc. 1, p. 8, ¶ 27).  By Mr. Seagle's own admission, the judge did not accept the flash drive, so there was an unsuccessful attempt at publication, and Ms. Snow made the attempt, not Sgt. Mitchell or Officer Easterwood.  Therefore, the Court will dismiss Count 6 against Sgt. Mitchell and Officer Easterwood.

In Count 8, Mr. Seagle alleges that Ms. Snow, Sgt. Mitchell, and Officer Easterwood, through the actions of Ms. Henderson and Mr. Hester, subjected Mr. Seagle to malicious abuse of process and malicious prosecution.  Although similar in name, the elements of these torts differ.  Abuse of process concerns "'the wrongful use of process *after* it has been issued," while malicious prosecution "is concerned with 'the wrongful *issuance* of process.'"  *Hurst v. Cook*, 981 So. 2d 1143, 1153 (Ala. Civ. App. 2007) (emphasis in *Hurst*).  To plausibly allege a claim for abuse of

process, "a plaintiff must [allege] the existence of an ulterior purpose, the wrongful use of process, and malice." *Hurst*, 981 So. 2d at 1153.  To plausibly allege a claim for malicious prosecution, a plaintiff must allege "(1) that there was a judicial proceeding initiated by the present defendant; (2) that it was initiated with malice on the part of the present defendant; (4) that the judicial proceeding was terminated n favor of the present plaintiff; and (5) that the present plaintiff suffered damage from the prosecution of that earlier action." *Ex parte Harris*, 216 So. 3d 1201, 1214 (Ala. 2016) (internal quotation marks and citation omitted).

Here, as Sgt. Mitchell and Officer Easterwood correctly point out in their motion, Mr. Seagle has not alleged that either defendant wrongfully executed legal process or that either behaved maliciously.  Therefore, the Court will dismiss Count 8 against Sgt. Mitchell and Officer Easterwood without prejudice.

In Count 9, Mr. Seagle alleges that Sgt. Mitchell and Officer Easterwood violated his due process rights under the Fourteenth Amendment.  His claim reads:

> The Plaintiff alleges that he was subjected to a **Denial of Due Process**, by the Defendant, Catherine L. Snow, the Defendant Officers of the Hueytown Policy Dept., and the City of Hueytown, through the actions of Rebecca Henderson and Teresa Hester.  As alleged in **paragraphs 23-27**, and **paragraph[s] 32-47**.

(Doc. 1, p. 17, ¶ 65) (emphasis in complaint).  This conclusory allegation is not sufficient to assert a claim.  Therefore, the Court will dismiss Mr. Seagle's due process claim against Sgt. Mitchell and Officer Easterwood.

As discussed above, Mr. Seagle's Sixth Amendment claim is moot. *See Gagliardi*, 889 F.3d at 733; *Powers,* 587 F.2d 783, 783–84.  Therefore, the Court will dismiss Count 11 against Sgt. Mitchell and Officer Easterwood without prejudice.

In Count 13, Mr. Seagle alleges that Sgt. Mitchell and Officer Easterwood willfully inflicted emotional distress upon him, meaning these defendants allegedly committed the tort of outrage.  *See Smitherman,* 872 So. 2d at 836; *Keene*, 477 Fed. Appx. At 583.  As noted, under Alabama law, this is an extremely narrow tort.

Mr. Seagle asserts that Ms. Snow "conspire[d] with all [] named defendants to aggravate[] and compound his serious[] medical conditions."  (Doc. 1, p. 18, ¶ 13), but he does not identify anything that Sgt. Mitchell or Officer Easterwood allegedly did to aggravate his medical conditions.  *Little*, 72 So. 3d at 1172. Therefore, the Court will dismiss Count 13 against Sgt. Mitchell and Officer Easterwood without prejudice.

## Motion for Default Judgment against Ms. Snow

Mr. Seagle has filed a motion for default judgment against Ms. Snow for her failure to answer the complaint.  (Doc. 26).  Before moving for a default judgment, a plaintiff first must ask the Clerk of Court to enter a default against a defendant. *See* FED. R. CIV. P. 55(a).  Mr. Seagle has not taken that preliminary step. Consequently, the Court will deny Mr. Seagle's motion for a default judgment.

**Ms. Snow's Motion to Dismiss**

Ms. Snow has asked the Court to dismiss Mr. Seagle's claims against her for improper service.  Ms. Snow contends that her name is not properly stated on the summons, and the copy of the complaint that she received is missing pages.  (Docs. 28, 28-1).  To perfect service, a summons must be served with the complaint within 90 days after the complaint is filed.  FED. R. CIV. P. 4(b), (m).  A summons must contain the name of the court and the parties and be directed to the defendant.  FED. R. CIV. P. 4(a).

Mr. Seagle filed this complaint on May 8, 2023.  (Doc. 1).  The record demonstrates that several summonses were issued to Ms. Snow, (*See* Docs. 5, 8, 12, 22, 25, 29), and were not served successfully for various reasons.  (*See* Docs. 7, 13, and 24).  Given these issues and because Mr. Seagle is *pro se*, the Court will extend the time for Mr. Seagle to serve Ms. Snow and deny her motion to dismiss for improper service.

Before Mr. Seagle attempts to serve Ms. Snow again, the Court must consider a preliminary matter.  Per this opinion and related dismissal orders, (Docs. 33, 34), Mr. Seagle has not stated claims against the City, Mayor Ware, or the police officers Mr. Seagle named in his complaint.  In his complaint, in addition to his state-law claims, Mr. Seagle asserts constitutional claims against Ms. Snow pursuant to 42 U.S.C. §1983.  With narrow exceptions, § 1983 claims are actionable only against

government officials; generally, private citizens are not proper §1983 defendants. *Charles v. Johnson*, 18 F.4th 686, 693–94 (11th Cir. 2021); *see also* 42 U.S.C. §1983.  To hold a private individual liable under § 1983, "the conduct at issue must be 'fairly attributable' to the state," meaning the relevant governmental entity. *Charles v. Johnson*, 18 F.4th 686, 696 (11th Cir. 2021) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982)).  A private individual's conduct is "fairly attributable" to a governmental entity when:

> (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) the State had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise ("nexus/joint action test").

*Charles*, 18 F.4th at 694 (quoting *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001)).  Within 21 days, Mr. Seagle shall explain in writing how he contends his § 1983 claims against Ms. Snow fall under one or more of these three categories such that he may proceed on his constitutional claims against Ms. Snow.

Accordingly, for the reasons explained above, the Court:

  i.   dismisses the three unidentified officers as parties to this matter, (Docs. 18, 34);

  ii.  dismisses all claims against the City and the defendants named in their official capacities, (Docs. 14, 33);

iii.    dismisses all claims against Mayor Ware and Chief Yarbrough in their individual capacity, (Docs. 14, 33);

iv.    dismisses all claims against Sgt. Mitchell and Officer Easterling in their individual capacity, (Docs. 14, 33);

v.    denies Mr. Seagle's motion for default judgment against Ms. Snow, (Docs. 26, 35); and

vi.    denies Ms. Snow's motion to dismiss for improper service, (Docs. 28, 31, 36, 37); and

vii.    orders Mr. Seagle to explain in writing within 21 days how his federal claims against Ms. Snow may proceed under *Charles v. Johnson*.

**DONE** and **ORDERED** this April 1, 2025.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE